**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
:
JOSE A. REYES, :
:
                    Plaintiff, :      22-CV-06760 (OTW)
:
     -against- :      <u>**OPINION & ORDER**</u>
:
:
:
:
COMMISSIONER OF SOCIAL SECURITY, :
:
                    Defendant. :
:
:
-------------------------------------------------------------x

**Ona T. Wang, United States Magistrate Judge:**

**I.    INTRODUCTION**

On July 27, 2019, Plaintiff Jose Reyes ("Plaintiff") filed a Title II application for a period of disability and disability insurance benefits, alleging knee and back impairments beginning May 7, 2018. (ECF 26 at ¶ 1). The claim was initially denied on October 16, 2019, and upon reconsideration on February 11, 2020. (ECF 26 at ¶ 2). Upon Plaintiff's request, an administrative hearing was held before ALJ Mark Solomon on July 17, 2020. *Id.* Plaintiff's attorney, Christopher D. Latham, appeared on behalf of Plaintiff and Vocational Expert ("VE") Harris Rowzie also testified. (ECF 13 at 14). On September 4, 2020, ALJ Solomon found in a subsequent decision that Plaintiff was not disabled. (ECF 13 at 14). Plaintiff then filed a request for an appeal, which the Appeals Council denied on June 21, 2022. (ECF 26 at ¶ 8). On August 9, 2022, Plaintiff filed a complaint commencing the current action against the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g), challenging the denial of

1

Plaintiff's application for a Period of Disability and Disability Insurance Benefits. (ECF 1 at 1). On December 14, 2022, the parties consented to my jurisdiction. (ECF 18 at 1).

For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**, the Commissioner's Cross Motion for Judgment on the Pleadings is **DENIED**, and the case is remanded for further proceedings pursuant to 42 U.S.C. § 405(g).

## II.    BACKGROUND

Plaintiff was born on November 3, 1970 and his highest level of education is completion of the eleventh grade. (ECF 13 at 38). He had previously worked as an HVAC technician and as a labor worker in construction. (ECF 26 at ¶¶ 10, 12). Plaintiff suffered a workplace injury on May 7, 2018, falling eight floors due to an elevator malfunction. (ECF 26 at ¶ 20). He immediately began receiving treatment, but still has significant pain in his back and knees which he alleges prevents him from doing household chores or maintaining work. (ECF 26 at ¶¶ 12-13).

### A.    Plaintiff's Medical History

1. *Treating Physicians' Records*

On May 31, 2018, Plaintiff underwent MRIs of each of his knees at Gotham City Orthopedics ("Gotham City"). (ECF 26 at ¶¶ 21-22). The MRI of his right knee showed a tear and separation of the medial meniscus with a partial tear of the ACL and the popliteus tendon, in addition to joint effusion. (ECF 26 at ¶21). The MRI of the left knee showed a tear of the medial meniscus, a partial tear of the ACL, a small tear of the medial collateral ligament, joint effusion, and a chondral deformity in the medial femoral condyle. (ECF 26 at ¶22).

Plaintiff then returned to Gotham City on June 20, 2018 and was seen by neurologist Dr. Aric Hausknecht. He reported that he had pain in his knee, lower back pain, tingling in his feet, and that his left leg sometimes gives way when walking. (ECF 13 at 281). Dr. Hausknecht reported 4+/5 strength in the right hip and 5-/5 strength in the left hip. (ECF 13 at 282). An MRI of the lumbar spine revealed L3-4 disc bulge, L4-5 disc bulge, and L5-S1 disc herniation and aggravation of previously asymptomatic degenerative joint disease, which led Dr. Hausknecht to diagnose Plaintiff with lumbosacral derangement. (ECF 13 at 283). Dr. Hausknecht further reported that Plaintiff had only had a partial response to conservative management and that interventional pain management and/or disc decompressive surgery should be considered." (ECF 13 at 283). An NCV/EMG test revealed evidence of right L5-S1 radioculopathy. (ECF 13 at 285).

Plaintiff received another MRI of the thoracic spine in August 2018 which showed multilevel interspace narrowing and dehydration, left paracentral disc bulge at T6-7 and left paracentral disc bulge at T9-10. (ECF 13 at 302-03).

Plaintiff saw Dr. Richard Semble, an orthopedic surgeon at Gotham City, on August 27, 2018. (ECF 13 at 315). At the time, Plaintiff reported that he could walk a quarter of a mile, stand for thirty minutes at a time, and sit for ten minutes at a time. (ECF 13 at 316). Dr. Semble opined that Plaintiff could perform sedentary duties with no bending, twisting, or lifting and carrying over 25 pounds. (ECF 13 at 320).

Dr. Gabriel L. Dassa performed surgery on Plaintiff's left knee on August 17, 2018. (ECF 13 at 347). The surgery entailed an arthroscopic medial and lateral meniscectomy, tricompartmental synovectomy, lysis of adhesion, and radiofrequency coblation of the medial

and lateral femoral condyle. *Id*. Dr. Dassa then performed surgery on Plaintiff's right knee on February 6, 2019. The procedure was very similar to the previous one on his other knee, but it also included abrasion chondroplasty of the lateral tibial plateau and radiofrequency coblation of the patella instead of the medial and lateral femoral condyle. (ECF 13 at 326).

On March 19, 2019, Plaintiff returned to Gotham City and saw Dr. Sean Lager, an orthopedist. (ECF 13 at 301-06). Plaintiff walked with a slow limp and reported neck pain, back pain, and knee pain. Dr. Lager opined that Plaintiff had moderate partial disability and could return to light work with lifting restrictions of ten pounds. Plaintiff had been receiving epidurals from Gotham City since June 2018, totaling eight different injections. (ECF 13 at 303). These treatments did not alleviate Plaintiff's pain, so Dr. Larger discussed with Plaintiff the possibility of surgery. Dr. Lager opined that Plaintiff could return to work as long as it was in a light capacity and he had lifting restrictions of ten pounds. (ECF 13 at 306).

In April 2019, Plaintiff received an MRI of his lumbar spine which revealed disc herniation at L3-4 and L5-S1 indenting on the thecal sac and abutting the exiting L5 nerve root. (ECF 13 at 268). It also showed diffuse facet inflammation throughout the lumbar spine. *Id*. An MRI of Plaintiff's right knee from the same time revealed "a tiny joint effusion," a "full-thickness chondral defect involving the lateral plateau", and cartilage thinning in the medial compartment." (ECF 13-1 at 386).

On June 3, 2019, Plaintiff had an appointment with Dr. Ali Malik, DO at Comprehensive Spine & Pain Center. (ECF 13-1 at 411). Given Plaintiff's high level of pain, Dr. Malik prescribed Plaintiff opioid medication and advised Plaintiff of its side effects. (ECF 13-1 at 414). In his physical examination, Dr. Malik found relatively normal results in terms of tenderness, range of

4

motion, and sensation and strength in the extremities. He opined that Plaintiff could do sedentary work with freedom to change positions and a carrying limitation of up to five to ten pounds. (ECF 13-1 at 415). Dr. Malik noted in Plaintiff's file a planned laminectomy with Dr. Auerbach on July 16, 2019. (ECF 13-1 at 411).

Plaintiff presented for an internal medical examination with Dr. Silva Aguiar on September 23, 2019. (ECF 13 at 354). Dr. Aguiar found range of motion loss in the lumbar spine area and left knee and a more prominent restriction of his right knee. (ECF 13 at 356). However, Plaintiff did have a normal gait, could walk on his heels and toes without difficulty, was able to raise from a chair without difficulty, and needed no help getting on and off the exam table. (ECF 13 at 355). From this evaluation, Dr. Aguiar found that Plaintiff had marked limitations in bending, heavy lifting, carrying, prolonged standing, prolonged walking and prolonged sitting and has up to moderate limitations in climbing stairs, kneeling and crouching.

Finally, Plaintiff saw Dr. Joshua Auerbach, an orthopedist at Wellness Orthopedics. (ECF 13 at 373). Plaintiff exhibited tenderness and spasms in the back, but intact motor strength and positive straight-leg raise. *Id.* Dr. Auerbach found that Plaintiff had persistent back and radiating lower extremity symptoms due to the S1 radiculopathy and herniated disk. *Id.*

2. *Consultative Opinions*

On October 8, 2019, Plaintiff saw Dr. A. Lee for a state agency consultation. Dr. Lee noted that Plaintiff had severe spinal disorders and major joint dysfunctions that were reasonably expected to produce Plaintiff's pain and that Plaintiff's statements about intensity, persistence, and limitations were substantiated by objective medical evidence. (ECF 13 at 57-

58). Dr. Lee found that Plaintiff had exertional limitations of occasionally carrying no more than twenty pounds and frequently carrying no more than ten pounds; standing and walking for a total of six hours in an eight-hour workday; and sitting for a total of 6 hours in an eight-hour workday. (ECF 13 at 58). Further, he found that Plaintiff is limited to only occasional climbing, stopping, balancing, kneeling, crouching, and crawling. (ECF 13 at 59).

On February 6, 2020, state agency consultant Dr. D. Schwartz reviewed the evidence in the record and found the same limitations as Dr. Lee. (ECF 13 at 68-70).

### B. Plaintiff's Nonmedical Records

#### 1. Plaintiff's Testimony at the Administrative Hearing

In the administrative hearing on July 17, 2020, Plaintiff testified that he had to quit his job at Prime Structure Incorporation because the injuries he sustained caused him too much pain and prevented him from working in those conditions. (ECF 13 at 39). He testified that he has trouble bending down to tie his shoes and is unable to do household chores like doing laundry and washing dishes. (ECF 13 at 40). Plaintiff stated that he cannot use public transportation and uses a cane 85% of the time when he leaves the house. (ECF 13 at 40-41). When asked about sitting and standing limitations, Plaintiff testified that he can only sit for fifteen minutes at a time before he gets numbness and pain down his back and leg and can only stand for ten minutes at a time. (ECF 13 at 41). Plaintiff testified to lifting and carrying limitations of about 25 pounds for eight minutes or ten pounds for ten minutes. (ECF 13 at 42).

Plaintiff testified to seeing a chiropractor and doctors regularly and taking Oxycodone, Meloxicam, and Cyclobenzaprine daily, but he stated that the medications make him drowsy

and are not effective at managing his pain. (ECF 13 at 43). Since his accident, Plaintiff has not partaken in any activities outside the home such as clubs, hobbies, vacations or travel outside the City of New York, babysitting, or volunteer work. (ECF 13 at 45).

   2. *Testimony of Vocational Expert Harris Rowzie at the Administrative Hearing*

At the administrative hearing, ALJ Solomon asked VE Rowzie to consider an individual under fifty, with an education through the 11th grade, and past work as an HVAC technician with the following limitations:

> "the ability to sit for six hours, stand or walk for six hours for the purposes of light work with normal work breaks and two hours for sedentary work. Lift or carry up to 20 pounds occasionally and ten pounds frequently for light work and five pounds frequently for sedentary work. Limited to occasional climbing balancing, stopping, kneeling, crouching, and crawling… avoid working at unprotected heights and with hazardous machinery."

(ECF 13 at 47-48).

In response, VE Rowzie testified that Plaintiff could perform the sedentary jobs of document preparer and escort vehicle driver, and the light jobs of ironer and furniture rental clerk. (ECF 13 at 48). VE Rowzie further testified that the hypothetical claimant would be able to do those jobs, excluding the escort vehicle driver, even if they had to switch positions every 15 minutes from sitting to standing. (ECF 13 at 48-49). However, if the claimant were not able to sit, stand or walk for a total of eight hours there would be no jobs that they can perform. (ECF 49).

C. **The ALJ's Decision**

On September 4, 2020, ALJ Solomon issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (ECF 13 at 15). Specifically, ALJ Solomon

found that Plaintiff had not engaged in substantive work since the alleged onset date and had the severe impairments of "lumbar disc herniation, lumbar radiculopathy, and bilateral knee tears." (ECF 13 at 17). However, he found that Plaintiff did not satisfy the listing criteria for any of his impairments and had the residual functional capacity to perform light work, and that there were jobs in significant numbers in the national economy that Plaintiff could perform. (ECF 17-24).

### III. ANALYSIS

#### A. Standard of Review

A motion for judgment on the pleadings should be granted if the pleadings make it clear that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 12(c). However, a court's review of the commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the commissioner and whether the correct legal standards were applied. 42 U.S.C.A. § 405(g). Substantial evidence is more than a mere scintilla but requires the existence of "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," even if there exists contrary evidence. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (same). This is a "very deferential standard of review." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The Court may not determine *de novo* whether Plaintiff is disabled but must accept the ALJ's findings unless "a reasonable factfinder would have to conclude otherwise." *Id*.

B.  **Determination of Disability**

To be awarded disability benefits, the SSA requires that one have the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also 20 C.F.R. § 416.905(a). An ALJ makes this determination through a five-step evaluation process, where the burden rests on the plaintiff for the first four steps and only after all four steps are satisfied does the burden then shift to the commissioner for the final step. 20 C.F.R. § 416.920.

First, an ALJ must determine that the plaintiff is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4). Second, an ALJ must find that the plaintiff's impairment is so severe that it limits her ability to perform basic work activities. *Id*. Third, an ALJ must evaluate whether the plaintiff's impairment falls under one of the Listings in Appendix 1 of Subpart P ("Listings"), such that she may be presumed to be disabled. Absent that, an ALJ must then determine the claimant's Residual Functional Capacity ("RFC"), or her ability to perform physical and mental work activities on a sustained basis. *Id*. Fourth, an ALJ then evaluates if the plaintiff's RFC precludes her from meeting the physical and mental demands of her prior employment. *Id*. If the plaintiff has satisfied all four of these steps, the burden then shifts to the commissioner to prove that based on the plaintiff's RFC, age, education, and past work experience, the plaintiff is capable of performing some other work that exists in the national economy. *Id.*

**C. ALJ Solomon's Decision**

Plaintiff rests his appeal on two issues. First, he argues that the ALJ's residual functional capacity ("RFC") assessment was not supported by substantial evidence. (ECF 26 at 8). Second, he argues that the ALJ erred in his evaluation of the medical evidence. *Id.*

The Court finds that ALJ Solomon's determination was not supported by substantial evidence. Because the case is remanded on this ground, it is unnecessary to consider whether the ALJ erred in his evaluation of the medical evidence.

   *1. ALJ Solomon's RFC Determination*

At step three of the determination of disability inquiry, the ALJ determines the plaintiff's RFC. In addition to the physical and/or mental impairments alleged by the plaintiff, the ALJ must also consider "the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment. SSR § 96-8p; *see also Arias v. Astrue*, 11-CV-1614 (TPG), 2012 WL 6705873 at *2 (S.D.N.Y. Dec. 21, 2012) (holding that the ALJ's RFC determination was not supported by substantial evidence because insufficient consideration was given to the plaintiff's side effects).

When reviewing the ALJ's RFC determination, the court only considers whether or not the finding was supported by substantial evidence. In order to satisfy the substantial evidence standard, it is not necessary for every conflict in the record to be reconciled. However, the ALJ must "set forth with sufficient specificity" the crucial factors they relied on to come to their conclusion. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). Moreover, when reviewing an ALJ's decision for substantial support, the court "may not accept appellate counsel's post hoc

10

rationalizations for agency action." *Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009) (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)) (internal quotation marks omitted).

In his decision, ALJ Solomon did not expressly mention any of Plaintiff's medication side effects, nor did he implicitly mention any of the limitations such side effects could impose on Plaintiff's RFC. The Commissioner claims that there were significant amounts of conflicting evidence and that according to the medical records and Plaintiff's testimony there was substantial evidence supporting ALJ Solomon's determination. This may in fact be the case. However, ALJ Solomon erred by failing to discuss *any* potential limitations, despite the fact that Plaintiff described experiencing side effects from his medications. Therefore, his RFC determination cannot be said to be supported by substantial evidence, as it omitted important factors from consideration. *See Burgin v. Astrue*, 348 F.Appx. 646, 647 (2d Cir. 2009) ("Our case law is plain that 'the combined effect of a claimant's impairments must be considered in determining disability[.]' ") (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995)).

IV. **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**, the Commissioner's Cross Motion for Judgment on the Pleadings is **DENIED**, and the case is remanded for further proceedings pursuant to 42 U.S.C. § 405(g).

                Respectfully submitted,

                *s/ Ona T. Wang*

Dated: March 12, 2024                  **Ona T. Wang**
    New York, New York            United States Magistrate Judge